UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **MELISSA ANDRADE,** )<br>　　　　　**Plaintiff,** )<br>v. )<br> )<br>**COMMISSIONER OF SOCIAL SECURITY,** )<br>**sued as Michael J. Astrue,** )<br> )<br>　　　　　**Defendant.** ) | Case No.  08-2104 |

## REPORT AND RECOMMENDATION

　　　　In August 2007, Administrative Law Judge Kenneth E. Stewart ("ALJ") denied Plaintiff Melissa Andrade's application for disability insurance benefits and supplemental security income.  The ALJ found that Plaintiff was not entitled to benefits because she could still perform her past relevant work.

　　　　In April 2008, Plaintiff filed a Complaint (#3) against Defendant, Michael Astrue, Commissioner of Social Security, seeking review of the ALJ's decision to deny her disability benefits and supplemental security income.  In October 2008, Plaintiff filed a Motion for Summary Judgment (#12).  In January 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#16).  After reviewing the record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment **(#12)** be **DENIED**.

### I.  Background
#### A.  Procedural Background

　　　　In March 2005, Plaintiff filed an application for disability insurance benefits and supplemental security income claiming she became disabled in July 1999 as a result of diarrhea and rectal urgency, depression, anxiety disorder, and diabetes.  (R. 24, 12-13.)  The Social Security Administration (hereinafter "SSA") denied Plaintiff's application initially and upon reconsideration.  (R. 40-44, 34-37.)  In February 2006, Plaintiff filed a timely request for a hearing.  (R. 33.)  The ALJ conducted the hearing in March 2007.  (R. 168.)  Plaintiff and a

vocational expert testified at the hearing.  (R. 168.)  In August 2007, the ALJ denied Plaintiff's application.  (R. 10-15.)

In February 2008, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the Commissioner's final decision.  (R. 3-6.)  In April 2008, Plaintiff appealed the decision by filing a complaint with this Court pursuant to 42 U.S.C. § 405(g), requesting that the Court grant summary judgment or remand the case for rehearing.

### B.  Plaintiff's Background

Plaintiff is 43 years old.  She was 39 when she applied for social security.  (R. 173.)  Plaintiff completed one year of college.  (R. 173.)  Plaintiff previously worked as a cashier, factory worker, and transcriptionist.  (R. 175-89.)

In July 1999, Plaintiff began experiencing gastrointestinal problems.  (R. 24.)  To address these issues, Plaintiff's treating physician, Dr. Rodney Alford, referred Plaintiff to Dr. Edward Jurkovic.  Dr. Jurkovic performed an upper endoscopy on Plaintiff that showed mild, nonspecific gastritis and a hiatal hernia.  (R. 93.)  In December 1999, Dr. Jurkovic performed a colonoscopy on Plaintiff that showed nonspecific colitis, a polyp, "some diverticular disease," and evidence of proctitis.  (R. 91.)  Tests later showed that all biopsies were negative for malignancy.  (R. 102.)  In January 2001, Dr. Jurkovic wrote a letter to Dr. Alford stating that he was unable to determine the cause of Plaintiff's diarrhea because her tests did not show any gross abnormalities.  Dr. Jurkovic stated that he had ordered a small bowel test but Plaintiff did not get the test.  Dr. Jurkovic also stated that he does not believe Plaintiff follows her diabetic diet.  (R. 85.)

In June 2005, Dr. Sarat Yalamanchili examined Plaintiff for Disability Determination Services ("DDS").  (R. 112.)  Dr. Yalamanchili could not determine a cause for Plaintiff's diarrhea but opined that it could be related to her diabetes.  Dr. Yalamanchili diagnosed Plaintiff with diabetes mellitus Type II, depression, and gastrointestinal reflux disease.  (R. 114.)  He found both the depression and diabetes to be poorly controlled.  (R. 114.)

In July 2005, Dr. Erwin Baukus evaluated Plaintiff's mental health at the behest of DDS. (R. 116). Dr. Baukus stated that Plaintiff takes care of her own personal hygiene needs, performs chores around her home, and runs errands. (R. 118.) Dr. Baukus diagnosed Plaintiff with mild depression with anxiety and psychological factors affecting her medical condition. (R. 118, 120.)

In August 2005, Dr. Phillis Brister completed a psychiatric review technique form concerning Plaintiff. (R. 121-33.) Like Dr. Baukus, Dr. Brister diagnosed Plaintiff with mild depression with anxiety and psychological factors affecting medical condition. (R. 124, 127, 133.) Dr. Brister found Plaintiff to have only mild impairments in activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation. (R. 131.)

In January 2006, Dr. Alford referred Plaintiff to Dr. Thomas O'Connor for x-rays and a small bowel endoscopy. Dr. Harry Platt reported that he could not ascertain the cause of Plaintiff's symptoms using this test, either. Dr. Platt reported that all findings were within normal limits, but that "gastroenteritis or even celiac disease cannot entirely be excluded due to the jejunal mucosal prominence." (R. 152.) The small bowel endoscopy revealed mild gastritis and mild diverticulosis in the sigmoid colon. (R. 166.)

In May 2007, Dr. Jurkovic performed a capsule endoscopy on Plaintiff that was not entirely successful but did reveal mild gastritis. (R. 144.)

In May 2007, the ALJ sent Plaintiff for another examination with Dr. Baukus. (R. 135-41.) Dr. Baukus again found that Plaintiff was mildly depressed. (R. 138.) Dr. Baukus also diagnosed Plaintiff with dysthymic disorder, generalized anxiety disorder, psychological factors affecting medical condition, and irritable bowel syndrome. (R. 139). Based on Plaintiff's report of anxiety, Dr. Baukus stated that Plaintiff suffers a moderate impairment in her ability to respond appropriately to work pressures in an unfamiliar setting or to changes in a routine work setting. (R. 141.) He opined that Plaintiff would be unable to keep appointments or to

consistently work a full shift. He based these opinions on Plaintiff's self-reports and the fact that she left his first examination after 40 minutes to go to the bathroom. (R. 141.)

### C. Plaintiff's Testimony at the Hearing

In March 2007, the ALJ conducted Plaintiff's hearing. Plaintiff and vocational expert Leanne Care (hereinafter "VE") testified.

The ALJ first asked Plaintiff if she wished to continue the proceedings without an attorney present and Plaintiff stated that she did. The ALJ also asked if Plaintiff had any new records with her or any tests outstanding. Plaintiff stated that she had one test outstanding with Dr. O'Connor.

Plaintiff is separated from her husband and lives with her three sons. She has completed one year of college. Plaintiff testified that she stopped working in December 1999. At that time, she was working at K-mart. Prior to that, she worked as a cashier in several places. Most of her cashier jobs included lifting and stocking duties. Plaintiff also worked at a rehabilitation center doing transcriptions of therapy sessions and billing. She testified that this job occasionally required that she lift and carry file boxes. Plaintiff lastly testified about her factory job. At the factory, Plaintiff performed several jobs but primarily worked as a machine operator. She testified that she was sometimes required to carry approximately 25-30 pounds and that this job lasted four months.

Plaintiff testified that she can no longer perform any of these jobs because she cannot leave her home. She testified that if she could find a job that would allow her to work for 20 minutes and then take an hour-long bathroom break, she would be able to work. She then qualified that statement by testifying that sometimes her diarrhea keeps her up all night which would prevent her from attending any job.

Plaintiff testified that she cannot make plans because her gastrointestinal disorder is unpredictable. Even on good days, she cannot be certain that it will not flare up. Plaintiff testified that in order to keep an appointment, she will stop eating a few days before the appointment so that she can be sure her diarrhea will not be an issue. She testified that to be certain she could attend the hearing, she had stopped eating two days previously.

Plaintiff testified that her practice of not eating before appointments causes her blood sugar to fluctuate which is not good for her diabetes. She stated that recently she has felt as though "everything's just shutting down on [her]" regardless of whether her blood sugar is high or low. (R. 190.) Plaintiff testified that she fainted during her son's medical malpractice trial when she had not eaten for five days. She occasionally feels as though she might fall but she has not yet lost consciousness. Plaintiff also stated that her hair is falling out, which she believes is a result of her diabetes, and she is frequently thirsty.

Plaintiff testified that her gastrointestinal condition used to cause her stomach pain, but she no longer experiences any pain associated with the condition. However, she is not sure whether the pain actually abated or she simply became accustomed to it. Plaintiff stated that, although the pain has abated, she is still not able to control her bowel movements, and she is often unable to reach the bathroom in time.

Plaintiff testified that although no doctor has stated a reason for her condition, she has researched it on the internet and fears that it could be intestinal neuropathy as a result of her diabetes. Plaintiff was uncertain if neuropathy had previously been found in the intestines. Plaintiff's doctor informed her about a condition known as "diabetic diarrhea," but she has not yet researched that. (R. 197.) Plaintiff stated that her doctors have tried several medications, none of which were successful.

Plaintiff testified that she is not currently seeing a doctor to treat her depression and anxiety. She stated that she finds it both obvious and silly that her doctors would believe that she is having anxiety attacks. Plaintiff testified that she had experienced depression previously

5

but that period of depression abated after she lost 80 pounds. Regarding her July 2005 visit to Dr. Baukus, Plaintiff testified that she had to leave that appointment because she had an accident and did not feel comfortable returning.

Plaintiff testified that her stomach problems often feel like hunger, causing her to eat constantly. She tries to avoid foods that she knows will aggravate her diverticulosis. She stated that she is able to make meals for her family and typically shops once a month.

The VE testified that cashier work is usually classified as light unskilled but, as Plaintiff performed it, it was medium, unskilled work. The VE classified Plaintiff's transcription work as sedentary or light, semi-skilled work. The VE classified the factory job as light, unskilled work. The VE testified that "the rule of thumb for absenteeism is 10 to 12 work days per year would be the allowable threshold." (R. 207.) Plaintiff then stated she had missed that many days during the four months she worked at K-mart.

### D. The ALJ's Decision

The SSA defines "disabled" as the inability "to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis. 20 C.F.R. § 416.920(a-f). At each step, if the ALJ affirmatively finds the claimant disabled or not disabled, the inquiry ends, but if no determination can be made, the Commissioner proceeds to the next step. 20 C.F.R. § 416.920(a)(4). The first question is whether the claimant is currently employed or was previously employed during the relevant period. If so, he is not disabled. 20 C.F.R. § 416.920(a)(4)(i). The second question is whether the claimant has a severe medical impairment that will last at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment, the inquiry ends. *Id.* However, if the claimant has a severe impairment, the third question is whether the severe impairment meets or equals one listed in Appendix 1 to subpart P of part 404 of Chapter 20. 20 C.F.R. § 416.920(a)(4)(iii). If it does, the claimant is

disabled. *Id*. If not, between steps three and four, the Commissioner determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations. 20 C.F.R. § 404.1545. The fourth question is whether claimant is able to perform his past relevant work with his current impairments. 20 C.F.R. § 416.920(a)(4)(iv). If he can, then he is not disabled. *Id*. If he is not able to perform his past work, the fifth and final question is whether, with his current limitations, he can perform other work which exists in significant numbers in the national economy. 20 C.F.R. § 416.920(c)(1).

In the present case, at the first step, the ALJ found that while Plaintiff had attempted to work after July 1999, this work did not constitute substantial gainful activity. At the second step, the ALJ found that Plaintiff suffered from severe chronic diarrhea and anxiety. (R. 12.) At the third step, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. At the fourth step, the ALJ found that Plaintiff was capable of performing her past relevant work. (R. 14.) Thus, the ALJ did not perform the fifth step of his analysis.

## II. Standard of Review

The ALJ's decision is subject to review by this Court pursuant to 42 U.S.C. § 405(g). This Court does not review the facts *de novo*, rather, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, if reasonable minds could differ as to whether or not a plaintiff is entitled to benefits, the Court must uphold the ALJ's decision. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996) (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court's task is to determine whether the record substantially supports the ALJ's decision. If it does, then the Court must uphold the ALJ's decision. *Books*, 91 F.3d at 977-78.

The Court defers to the ALJ's credibility findings.  This deferential standard acknowledges that the reviewing court does not have the opportunity to hear and see witnesses, as the ALJ does.  *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006).  Therefore, courts uphold an ALJ's credibility finding as long as the record affords some support for the finding.

### III.  Discussion

Plaintiff argues that the ALJ (1) did not obtain a proper waiver of counsel, (2) made an improper credibility finding, and (3) should have performed the fifth step of the analysis.  For these reasons and others, Plaintiff contends that (4) the ALJ's decision is not based on substantial evidence.

#### A.  Waiver of Counsel and Development of the Record

Plaintiff first argues that the Court should remand this case because the ALJ failed to obtain proper waiver of counsel.

Claimants have a statutory right to be represented by counsel at the hearing, although they are not required to have counsel present.  20 C.F.R. § 404.1700.  To ensure that a claimant has knowingly and intelligently waived her right to counsel, the ALJ must inform the claimant (1) of the valuable role that an attorney could play in the proceedings, (2) of the possibility of free counsel, and (3) that attorney's fees are limited to 25 percent of the award.  *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991).

The record shows the ALJ did not present all the information necessary to enable Plaintiff to properly waive counsel.  At the hearing, the ALJ mentioned having sent Plaintiff information in the mail concerning her right to counsel, but that information is not in the record.  In addition, the ALJ informed Plaintiff that an attorney "who know[s] the disability law can be helpful . . . because they know what kinds of things to bring in and what arguments to make."  (R. 170.)  The ALJ did not discuss the possibility of free counsel or the limitation on attorney's fees.  Thus, Plaintiff is correct that she did not knowingly and intelligently waive counsel.

However, a violation of the claimant's right to counsel is not, in itself, cause for remand as long as the ALJ "probes the claimant for possible disabilities and uncovers all of the relevant evidence." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). Thus, even if the ALJ fails to obtain proper waiver of counsel, the case need not be remanded if the ALJ adequately develops the record. *Skinner v. Astrue*, 478 F.3d 836, 841-42 (7th Cir. 2007). The Commissioner bears the burden of establishing that the ALJ adequately developed the record with the plaintiff. *Binion*, 13 F.3d at 245.

Before the ALJ questioned Plaintiff at the hearing, he explained the purpose and general procedure of the hearing and the role of the VE. (R. 171.) The ALJ paused again later in the hearing to explain to Plaintiff the legal difference between a disability benefit claim and a supplemental security income claim. (R. 175.) The ALJ asked Plaintiff if she had brought any other evidence with her or if other medical information was outstanding. Plaintiff indicated that one test was outstanding. (R. 171.) The ALJ obtained this test after the hearing. (R. 143.) The ALJ also sent Plaintiff to see Dr. Baukus for an updated mental evaluation because her prior evaluation was nearly two years old. (R. 209.)

The ALJ questioned Plaintiff extensively about her medical issues and her past work. He asked about each job she had held and the demands and responsibilities of each. This questioning covered 14 pages of the transcript. (R. 175-89.) The ALJ also allowed Plaintiff to interject to clarify her position when the VE was testifying. (R. 207.)

The record shows that the ALJ failed to obtain proper waiver of counsel. However, the ALJ explained the hearing process, questioned Plaintiff in detail about her medical issues and past relevant work, and also sent for additional medical evidence that he felt might help him reach a decision. Thus, the ALJ adequately developed the record making any failure to obtain proper waiver of counsel harmless.

While the ALJ admirably developed the record, this Court notes that the ALJ could have avoided the entire issue by simply following the procedure described in *Thompson*.

### B. ALJ's Credibility Finding

Plaintiff next argues that the ALJ relied on his subjective feelings rather than objective factors when he found that Plaintiff was not credible. Plaintiff specifically contends that the ALJ does not state which portions of the record he relied on when assessing credibility.

When evaluating an ALJ's credibility determination, courts give great deference to the ALJ's assessment because the ALJ has the ability to observe witnesses who testify at the hearing. *Sims*, 442 F.3d 536, 537-38 (7th Cir. 2006); *Edwards v. Sullivan*, 985 F.2d 334, 337 (1993) (quoting *Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989)). Therefore, the ALJ's credibility determinations will generally not be disturbed as long as they have some support in the record. *Edwards*, 985 F.2d at 337 (quoting *Anderson v. Sullivan*, 925 F.2d 220, 222 (7th Cir. 1991)). In a recent decision, the Seventh Circuit court stated that a court reviewing a credibility determination "merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2001)).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's testimony about the "intensity, persistence, and limiting effects" of the symptoms was not entirely credible. (R. 14.) The ALJ stated that none of the medical tests conducted supported Plaintiff's claims that her diarrhea was so intense that it prevented her from working. The ALJ noted that, in fact, no clear cause for Plaintiff's symptoms has ever been found. These statements are based on the entirety of the medical evidence and, therefore, could not be given a specific citation. The ALJ also noted that Dr. Brister's psychiatric evaluation indicated only mild limitations in activities of daily living, social functioning, and concentration, persistence, and pace, and no episodes of decompensation. (R. 13, 131.) Thus, the ALJ adequately explained his reasoning for finding that Plaintiff was not entirely credible. (R. 14.)

### C.  Step Five Analysis

Plaintiff next argues that the ALJ gave the VE an inaccurate hypothetical in order to avoid performing the fifth step in his analysis.

The hypothetical question an ALJ asks a vocational expert must be accurate and contain all the claimant's limitations.  *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004).  However, the Regulations declare that if the ALJ finds the claimant capable of doing her past relevant work, the claimant is not disabled and the ALJ need not proceed to step five.  20 C.F.R. § 404.1520(a)(4)(iv).

The Court disagrees with Plaintiff's contention that the ALJ gave the VE an inaccurate hypothetical.  In fact, the ALJ did not provide the VE with a specific hypothetical question.  Instead, the ALJ asked the VE if she had read Plaintiff's records and listened to Plaintiff's testimony.  The VE stated that she had and testified on this basis.  (R. 180.)  When the ALJ asked the VE specifically about the general tolerance for absenteeism, he did ask the VE to assume a person who has no limitations.  (R. 180.)  In the context of this hypothetical, though, the ALJ was asking about absenteeism in general, not Plaintiff in particular.

Moreover, the ALJ's questioning of the VE is consistent with his determination that Plaintiff had no limitations:  At step four, the ALJ found Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels." (R. 14.)  The ALJ extensively questioned Plaintiff and the VE about Plaintiff's past work in order to fully understand the demands it would place on Plaintiff.  The ALJ considered both this discussion of Plaintiff's past work and her RFC and found that she could perform her past relevant work.  In the absence of any limitations, the ALJ did not need to rely on the VE's testimony.  Thus, the ALJ had no reason to proceed to the fifth step in his analysis.  Nothing in the record indicates that the ALJ made his decision at step four to avoid performing a step five analysis.

### D. Substantial Evidence

Finally, Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ (1) rejected an entire line of evidence by not considering all of Plaintiff's medical issues, and (2) relied on his own opinion of the record rather than objective medical evidence when he found she could perform her past relevant work.

The ALJ cannot reject entire lines of evidence and discuss only those that support his conclusion. 20 C.F.R. § 404.1529(c)(3); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). However, the ALJ need not discuss every piece of evidence in his decision. *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995).

Plaintiff contends that the ALJ erred by classifying her diabetes as nonsevere because the ALJ mentioned only the absence of end organ damage to support this finding. Plaintiff contends that the evidence shows clear signs of severe diabetes and that it could be affecting her in other ways.

The record does not support this contention. None of Plaintiff's doctors characterize her diabetes as severe. Dr. Jurkovic noted that Plaintiff's diabetes was poorly controlled, but he believed that was due to Plaintiff's inattention to her diet. (R. 85.) Dr. Yalamanchili opined that Plaintiff's diabetes could cause her diarrhea, but no follow-up tests were conducted to confirm this possibility nor has any other doctor suggested a connection. (R. 122.) Plaintiff's doctors primarily mentioned her diabetes as a part of her medical history, not because they believed it was causing Plaintiff's problems. The ALJ is not required to mention all the ways diabetes might possibly affect Plaintiff. Thus, the ALJ's finding that Plaintiff's diabetes is not severe is supported by substantial evidence and he did not ignore an entire line of evidence.

Plaintiff also contends that the ALJ ignored some of her medical issues. Plaintiff lists in her brief several ailments that the ALJ did not specifically mention in his decision. However, all of these ailments are related to her gastrointestinal problems. Furthermore, Plaintiff's doctors found all of these ailments to be mild and did not indicate that they caused Plaintiff's symptoms.

The ALJ addressed Plaintiff's gastrointestinal problems. The ALJ is not required to discuss every test result and his failure to do so does not constitute ignoring an entire line of evidence.

Plaintiff contends that the ALJ erred by rejecting Dr. Baukus' opinion that she could not consistently work a full shift. Plaintiff states that the ALJ used his own judgment rather than trusting the medical opinion of Dr. Baukus. Plaintiff also contends that the ALJ should have called an additional medical expert because he rejected Dr. Baukus' opinion.

The ALJ cannot determine a claimant's RFC without medical evidence. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). However, the medical opinions upon which an ALJ relies "need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). When the ALJ does reject medical evidence, he must "minimally articulate his reasons for crediting or rejecting" that evidence. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992).

In the present case, the ALJ explained why he discredited Dr. Baukus' opinion that Plaintiff would not be able to consistently work a full shift, noting that Dr. Baukus stated that his opinion was based on Plaintiff's self-report and departure from their earlier consultation. (R. 13, 141.) Dr. Baukus did not have personal knowledge of why Plaintiff left their first meeting. Rather, Dr. Baukus relied on Plaintiff's and her son's reports. (R. 141.) Thus, the ALJ found that Dr. Baukus' evaluation was not based on objective observations and did not credit them.

Plaintiff also contends that, in light of the fact that the ALJ rejected Dr. Baukus' opinion, the ALJ should have called for an additional medical expert to assess Plaintiff's mental ability. This argument suffers from two flaws. First, the Regulations state that an ALJ will request additional evidence only when the available evidence is insufficient to make a disability determination. 20 C.F.R. § 404.1527(c)(3). The ALJ in this case felt he had sufficient evidence to make a decision without calling an additional medical expert. *See Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994) (stating that courts generally respect the ALJ's "reasoned judgment" regarding how much evidence is needed to make a finding about disability). Second, the ALJ

had already considered the medical opinion of another expert, Dr. Brister. Dr. Brister assessed Plaintiff's mental abilities, and the ALJ refers to those findings in his decision. (R. 13.) Thus, the ALJ had another mental health expert's opinion available to him when he made his decision, and he did not err by failing to call for an additional medical expert.

Plaintiff also argues that the ALJ referred only to tests dated prior to her date last insured. This is untrue. While the ALJ does refer to two tests performed prior to her date last insured, he also refers to other tests elsewhere in his opinion. (R. 14.) Furthermore, Plaintiff's later test results did not indicate any changes in her condition.

Finally, Plaintiff contends that the ALJ's finding of both severe impairments and no limitations is contradictory. However, Plaintiff offered no citation or support for this argument, and the Seventh Circuit has "made it clear that a litigant who fails to press a point by supporting it with pertinent authority or by showing why it is sound despite a lack of supporting authority, forfeits the point." *Doe v. Johnson*, 52 F.3d 1448, 1457 (7th Cir. 1995).

Here, the ALJ accurately noted that no medical tests corroborated Plaintiff's self reports of the limiting effect of her condition. In addition, the ALJ considered Plaintiff's mental health and found nothing in those records to indicate she could not perform her prior work, and the ALJ sufficiently explained his reasoning for not crediting Dr. Baukus' testimony regarding Plaintiff's mental health. A reasonable mind could accept this evidence as adequate to support the ALJ's decision. After reviewing the ALJ's decision and the record, the Court concludes that substantial evidence supports the ALJ's findings.

## IV.  Summary

For the reasons stated above, this Court recommends Plaintiff's Motion for Summary Judgment **(#12)** be **DENIED**. The parties are advised that any objection to this recommendation

must be filed in writing with the clerk within ten working days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. V. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 2nd day of July, 2009.

                                                  s/ DAVID G. BERNTHAL
                                                  U.S. MAGISTRATE JUDGE